# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-1066

## CONSOLIDATED WITH

## 09-1279

**MARY PHYLLIS SOILEAU**

**VERSUS**

**SMITH'S TRUE VALUE AND
RENTAL, ET AL.**

************

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 69,770
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

************

**JIMMIE C. PETERS
JUDGE**

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Jimmie C. Peters and J. David Painter, Judges.

**AFFIRMED AS AMENDED AND
REMANDED WITH INSTRUCTIONS.**

**W. Glenn Soileau**
**Jacques P. Soileau**
**Soileau Law Offices**
**P. O. Box 344**
**Breaux Bridge, LA 70517**
**(337) 332-4561**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Mary Phyllis Soileau**

**J. Michael Percy**
**Andrew P. Texada**
**Stafford, Stewart & Potter**
**P. O. Box 1711**
**Alexandria, LA 71309**
**(318) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Deere & Company**
    **John Deere Limited**

PETERS, J.

These consolidated matters involve a dispute over discovery compliance. The defendants, John Deere Limited and Deere & Company (also referred to collectively as "Deere"), brought this appeal, seeking reversal of the trial court's judgment sanctioning them for failure to comply with its discovery order. The plaintiff, Mary Phyllis Soileau, has answered the appeal, seeking additional sanctions. For the following reasons, we reduce the award of expenses, affirm in all other respects, and remand with instructions.

**PROCEDURAL HISTORY ON APPEAL**

The consolidation of these two matters arose because the defendants filed both an appeal and a supervisory writ on the issues now before us. This court considered the supervisory writ application and, on October 19, 2009, granted the application for the limited purpose of consolidating it with the appeal. *Soileau v. Smith's True Value and Rental*, 09-1066 (La.App. 3 Cir. 10/19/10).

In concluding that the matter is now properly before us on appeal, we recognize that the defendants have not made any allegation of irreparable harm or injury, and note the general rule that judgments and orders dealing with discovery are interlocutory matters which cannot be appealed absent some showing of irreparable injury. La.Code Civ.P. art. 2083, *Pitre v. Kero-Sun, Inc.*, 520 So.2d 1192 (La.App. 3 Cir. 1988). However, we also note that "all contempt judgments are now considered final judgments, subject to immediate appeal." *Hodges v. Hodges*, 02-489, p. 9 (La.App. 3 Cir. 10/2/02), 827 So.2d 1271, 1276, *writ denied*, 02-2485 (La. 11/8/02), 828 So.2d 1122. *See also Stiltner v. Stiltner*, 00-2079 (La.App. 4 Cir. 11/8/00), 772 So.2d 909.

## ANALYSIS OF THE TRIAL COURT RECORD

This litigation arises from a November 1, 2007 accident wherein Ms. Soileau sustained personal injuries when a John Deere Model 460 front end loader became detached from a John Deere Model 4510 tractor and struck her right leg. Ms. Soileau brought an action for damages against a number of defendants, including Deere & Company, on April 21, 2008. She amended her petition on August 11, 2008, to name John Deere Limited as a defendant.

The appeal now before us is based on the trial court's determination that Deere & Company and John Deere Limited violated its March 12, 2009 order directed at the defendants' obligation to provide specific information sought by the plaintiff through discovery. The March 12, 2009 order reads in pertinent part as follows:

> IT IS ORDERED, ADJUDGED, AND DECREED that the defendants, John Deere Limited and Deere and Company, answer all of the Interrogatories and Request for Production of Documents previously sent to the defendants in compliance with Article 1458 of the Louisiana Code of Civil Procedure and shall provide the name of all persons answering the Interrogatories and shall answer all of the Interrogatories under oath.

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff, MARY PHYLLIS SOILEAU, is entitled to depose Deborah Jean Morrison and the defendants shall give available dates to the Plaintiff for her deposition.

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Deborah Jean Morrison, Deere and Company, and John Deere Limited provide all of the information previously withheld at the request of Deborah Jean Morrison regarding the Consumer Protection Agency file including and <u>not limited to</u> all the correspondence, interoffice communications, memorandums, emails, list of incidents, bulletins, and particularly all those pages objected to by Deborah Jean Morrison in her correspondence to the Consumer Protection Agency in December 2008.

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Deere and Company and John Deere Limited pay all of the expenses of the Plaintiff in the deposing of Dave Willer in Canada to Plaintiffs

2

[sic] Counsel in the taking of the deposition of Dave Willer on January 06, 2009.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Sanctions which will, or may be imposed in this matter, as well as the amount of Attorney Fees which will or may be imposed is deferred until such time as the court has an opportunity to review the response of Deere and Company, John Deere Limited, and Deborah Jean Morrison to the Orders of this court regarding the Motion to Compel and for Sanctions for failure to Answer Interrogatories and Request for Production of Documents.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that John Deere Limited, Deere and Company and Deborah Morrison comply with the Orders regarding discovery in this Judgment within the next fifteen (15) days.

The discovery history leading up to this order is extensive and begins with the initial petition filed by Ms. Soileau on April 21, 2008. However, the primary discovery issue now before us relates to Ms. Soileau's attempts to obtain the accident history of the John Deere Model 400 series front end loaders. Contemporaneously with her initial suit, Ms. Soileau filed interrogatories and requests for production of documents directed at Deere & Company. Among other information Ms. Soileau sought through the initial discovery process, she asked for information concerning the accident history of all John Deere Model 460 front end loaders from the time of manufacture and distribution through December of 2007. Deere & Company objected to the interrogatories seeking this information[1] but, subject to its objection, answered the interrogatories by stating that it had no reports of an individual being injured by a Model 460 loader associated with a trailer detachment, nor had there been any

---

[1]Deere & Company consistently objected to all interrogatories related to prior claims associated with its machinery, complaining that the interrogatories were "overly broad and burdensome" that the information sought was "not limited to circumstances similar" to those involved in the litigation, and that "the information sought [was] neither relevant nor calculated to lead to admissible evidence."

3

claims or lawsuits against it asserting a personal injury from a detachment by a Model 460 loader.[2]

Ms. Soileau propounded a second set of interrogatories and requests for production of documents to Deere & Company, continuing to seek the same or similar information. In its June 24, 2008 response, Deere & Company continued to generally deny the existence of a history of complaints associated with detachment problems with the Model 460 series, while at the same time divulging that it had received one report of a 400 series loader of a "similar design to the Model 460 loader involved in this litigation" detaching from a tractor, and seven other reports of similar detachment events involving 400 series loaders "of a different design from the Model 460 loader involved in this litigation."[3]  On the one hand it denied any legal claims or lawsuits involving the 400 series, and on the other hand listed two suits, one in Florida and one in California, that involved problems with 400 series loaders.  Deere & Company then listed a report of an unexpected detachment arising from a 2005 incident in Pylesville, Maryland involving a Model 410 loader, which it suggested was of a "similar design" to the loader involved in this litigation.  Also, it listed seven additional reports involving the unexpected detachment of 400 series loaders, suggesting that all were of a "different design" from the loader involved in this

------

[2]Deere & Company did acknowledge a 2002 California property damage claim where "the ram in a loader cylinder cracked."

[3]Significantly, Deere & Company did not state that the latching mechanism was different on other 400 series loaders, but only that the reports of detachment events involved other loaders of the series.

4

litigation. Despite this assertion, two of the seven in the list were described as Model 460 series loaders.[4]

On October 9, 2008, Deere & Company provided Ms. Soileau with supplemental answers to her interrogatories. In these answers, Deere & Company revealed that it had received nine additional reports of unexpected detachment of a 400 series loader, all involving a different design from the Model 460 loader involved in this litigation. However, when Deere & Company listed the reports, five referred to a Model 460 loader.[5] Deere & Company did not explain why these reports were not provided originally other than to say that they were not available at that time. However, it asserted that they had already been supplied through a United States Consumer Product Safety Commission report which it had previously provided to Ms. Soileau.

Despite Deere & Company's assertion that it had provided Ms. Soileau with the entire Consumer Product Safety Commission report, the record reflects otherwise. In fact, although this report contains significant information relative to recalls of equipment manufactured under the Deere name, the defendants did everything they could to prevent Ms. Soileau from obtaining the full report.

The report itself became an issue in this litigation when, on July 21, 2008, and in response to a June 30, 2008 letter from Ms. Soileau's attorney, Deere & Company's attorney provided Ms. Soileau with sixty-two pages of the Consumer

---

[4]One was described as a Model 460 loader in Tecumseh, Michigan, which disengaged in April of 2000, and another as a Model 460 loader in Illinois, which disengaged in September of 2002.

[5]These included an incident in Uniontown, Pennsylvania, in July of 1999; an incident in Jerseyville, Illinois, in November of 1999; an incident in McKinney, Texas, in December of 1999; an incident in Bernardston, Massachusetts, in December of 1999; and an incident in Brantford, Ontario, in January of 2000.

Product Safety Commission's 2000 recall of John Deere model 410, 420, 430 and 460 loaders. This was Deere & Company's version of "the entire [Consumer Product Safety Commission] recall file" referred to in its November 13, 2008 responses to discovery.

On June 30, 2008, Ms. Soileau also contacted the Consumer Product Safety Commission seeking, under the federal Freedom of Information Act, 5 U.S.C. § 552, all information the agency had in its possession with regard to the 400 series loaders. The Consumer Product Safety Commission did not immediately respond to Ms. Soileau's request. Instead it first forwarded a copy of its entire file to Deere & Company, where Deborah J. Morrison, Deere & Company's assistant general counsel, reviewed the file. She then corresponded with the agency and objected "to disclosure of portions of the records attached to [the agency's] letter."[6] Finally, on December 24, 2008, or six months after her request, the Consumer Product Safety Commission forwarded Ms. Soileau a redacted copy of its records on the 2000 recall of certain John Deere loaders, noting in the transmittal letter that certain information had been withheld. The redacted copy contained 277 pages, or 215 pages more than the "entire" file provided by Deere & Company in July of 2008. Still, the 277-page file included thirty-five blank pages and twenty-nine additional pages with information blacked out.

On December 23, 2008, Ms. Soileau filed a motion to compel Deere & Company and John Deere Limited to answer her interrogatories; to have the

---

[6]Specifically, Ms. Morrison objected to the disclosure of eight pages containing Deere's internal bulletins to distributors; twelve pages of "recall Effectiveness Check Summaries," stating that those pages contained the names and addresses of Deere retail customers; four pages that contained a list of names and addresses of customers who purchased the loaders; one page that contained a summary of incidents reported by customers and/or dealers; two pages of internal e-mails from Ms. Morrison to Deere engineers; and twenty-one pages containing records of calls from John Deere dealers to Deere's dealer technical assistance center.

6

defendants sanctioned; to prohibit the defendants from producing certain evidence at trial; to order the defendants to make Ms. Morrison available for a deposition; and to be awarded penalties and attorney fees. She based this request for relief on her assertion that the defendants made incorrect, misleading, and incomplete representations in response to her interrogatories; refused to allow her to depose Ms. Morrison; and objected to Ms. Soileau obtaining a certified copy of the records from the Consumer Products Safety Commission.

The day after this filing, on December 24, 2008, Ms. Soileau served Dave Willer, who was the project engineer with general supervisory responsibility for the design of the Model 460 loader, with a notice of the deposition scheduled for January 6, 2009, in Ontario, Canada. Mr. Willer is a former employee of John Deere Limited and a Canadian citizen. After having two conversations with Ms. Morrison, Mr. Willer decided not to appear at the deposition.[7]

On January 15, 2009, Deere & Company filed a motion seeking a protective order preventing Ms. Soileau from taking Ms. Morrison's deposition. That same day, Mrs. Soileau filed a motion for contempt, expenses, attorney fees, and sanctions based on the non-appearance of Mr. Willer at the January 6, 2009 deposition. Specifically, Ms. Soileau accused Ms. Morrison of "witness tampering and stonewalling" based on the fact that Mr. Willer decided not to appear for the deposition after being contacted by Ms. Morrison.

Deere & Company and John Deere Limited responded to Ms. Soileau's accusations concerning Ms. Morrison's activities by providing the trial court with Ms. Morrison's affidavit, wherein she asserted that when she saw a December 4, 2008

---

[7]Ms. Soileau acknowledges that, although Mr. Willer received notice of the deposition date and place, the service itself was not proper for a Canadian citizen physically located in Canada.

letter from Ms. Soileau's attorney which indicated that Mr. Willer agreed to testify at a deposition only if John Deere approved the appearance, she contacted Mr. Willer "to make sure he did not mistakenly believe that he needed Deere's permission to testify in this matter." She asserted in her affidavit that she informed Mr. Willer that whether or not he appeared for the deposition was entirely his decision. Ms. Morrison also asserted in her affidavit that, on Christmas Eve of 2008, Mr. Willer called her at home to advise her that he had received a subpeona issued by a Louisiana Court for a January 6, 2009 deposition. Ms. Morrison stated that "Mr. Willer was aware, and I agreed, that neither document [a subpeona and letters rogatory issued by a Louisiana court] was a valid subpeona compelling his appearance at a deposition in Ontario, Canada," and that she again told him whether he appeared at the deposition was "entirely his decision."

On January 29, 2009, Deere & Company and John Deere Limited filed a supplemental memorandum to the trial court wherein they attempted to explain away their initial failure to list all the information required by Ms. Soileau and blamed their oversight on the quirks of their record-keeping system. However, they asserted that Deere & Company amended its discovery response to include those reports "[a]s soon as they were discovered."

The hearing giving rise to the March 12, 2009 order occurred on January 30, 2009. In addition to the procedural history set forth herein, Ms. Soileau directed the trial court's attention to the fact that the defendants' responses to her first, second, and third sets of interrogatories were verified by Deere & Company's assistant corporate secretary.

8

Ms. Soileau also noted to the trial court that the answers provided, even when amended with "newly discovered information," were incomplete in that names and addresses of the customers involved were not provided. Again, the defendants responded by explaining that the nature of their record keeping of incident reports caused them to initially overlook reports not provided in the early responses.

With regard to the non-appearance of Mr. Willer at the January 6, 2009 deposition, Ms. Soileau's counsel pointed out that he was not made aware that Mr. Willer would not appear until he was already in Canada. The defendants relied on Ms. Morrison's affidavit to justify their actions.

When the hearing occurred, trial had been set for March 16, 2009. Given its findings on the discovery issues, the trial court upset that trial date, reset the matter for July 20, 2009, and set a discovery deadline of May 8, 2009.

Between April 14, 2009, and May 7, 2009, Deere & Company and John Deere Limited provided Ms. Soileau with additional information requested in her discovery endeavors. One of the issues raised by these filings relates to the content of certain compact discs (CDs) that purport to contain testing data on the 400 Series loaders. Ms. Soileau requested in one of her requests for production that the defendants "[p]lease produce a complete and accurate copy of any and all files comprising Deere's 109 file sequence that have not already been provided on Disc 1 and Disc 2," In response, Deere stated:

> Deere objects to this request on the grounds it is overly broad and burdensome. Without waiving this objection, Deere avers that all of the 109 test records related to the latching system of the 400 series loaders during the period requested have been or are being produced. *The 109*

*files which are not produced are not relevant to the latching system of the 400 series loaders and therefore are not relevant to the issues involved in this lawsuit.*

(Emphasis added.)

In other words, the defendants acknowledged that they had additional data, but unilaterally determined that it was not relevant and, not only did not provide the data, but did not acknowledge its existence until they answered this request. In response to Ms. Soileau's request for additional files in the 438 file sequence, she received the same response—"the files in the 438 account not produced are not relevant to the issues involved in this lawsuit."

In their May 5, 2009 response, the defendants supplemented their answers to earlier interrogatories by acknowledging that they had "discovered old warranty claims . . . which mention in the narrative a loader becoming detached," and that one claim related to the same design as that found on the Model 460 loader at issue in this litigation. They attached thirty-four warranty forms to the supplemental answer. However, many of the forms were not complete in that they did not include the customer name, address, or telephone number; or the name and/or location of the dealer.

These revelations were followed by two motions *in limine*—one by each side—seeking to either allow or prevent the introduction of the discovered information concerning prior incidents or reports relating to detachments of front loaders. At a May 21, 2009 hearing, the trial court granted Ms. Soileau's motion *in limine* but denied the defendants' motion. In doing so, the trial court concluded that the prior incidents involved equipment substantially the same as the Model 460 loader at issue here. The defendants sought review of this judgment by an application

for supervisory writs to this court, which was denied. *Soileau v. Smith's True Value and Rental*, 09-725 (La.App. 3 Cir. 9/1/09). The defendants' attempt to have the supreme court address the issues met the same fate. *Soileau v. Smith's True Value and Rental*, 09-2113 (La. 12/11/09), 23 So.3d 921.

On May 11, 2009, Ms. Soileau followed up on her February 17, 2009 interrogatories and request for production of documents with a letter asking for specific test reports. The defendants assert in their brief on appeal that by June 1, 2009, Deere "produced several thousand more pages of test reports, including all available records requested in counsel's letter of May 11th."

On May 15, 2009, Ms. Soileau made thirty-one requests for production, asking for the names, addresses, and telephone numbers of the consumers who purchased a loader or tractor with the product identification numbers given in those thirty-one forms. Ms. Soileau also asked to be told which dealer the consumer purchased the loader or tractor from and when the customer was provided with a "Latch Plate Retainer."

On May 22, 2009, Ms. Soileau filed the motion that is the subject of the appeal before us, seeking to compel Deere to respond to her discovery requests, to have Deere held in contempt, and to have sanctions imposed. In this motion, Ms. Soileau asserted that the defendants violated the court's March 12, 2009 order for discovery by intentionally and wilfully failing to timely disclose thirty-one prior incident reports and "that there are still other prior incidents and/or details known to Deere about prior incident reports which Deere has still not provided to the Plaintiff, again in deliberate violation of this Court's order that has been in effect since January 30, 2009." Ms. Soileau also contended in the May 22, 2009 motion that although Deere produced two

CDs of memoranda, pictures, and information relating to the testing and design of the 400 series loaders in response to the court order, she had discovered "that certain files and information were omitted, left blank, and/or were missing." Ms. Soileau asserted that Deere subsequently submitted an additional five testing files, but was still refusing to provide the specific information that Ms. Soileau requested.

On June 1, 2009, Deere & Company and John Deere Limited provided Ms. Soileau with the names, addresses, and telephone numbers of twenty-nine of the consumers who purchased the loaders, but stated that for two of the loaders they did "not have any retail customer information." The defendants also provided the names and addresses of the thirty-one dealers from whom the loaders were purchased.

On July 1, 2009, the trial court held a hearing on Ms. Soileau's motion for contempt and sanctions that is the subject of this appeal. In rendering judgment, the trial court provided the parties with a rather lengthy statement of the reasons behind its decision. The trial court made it clear to the litigants of its dissatisfaction with the defendants' approach to discovery from the beginning of the litigation and noted that its position concerning full discovery had been made clear on numerous occasions. The trial court pointed out that the piecemeal release of the information on the prior incidents did not meet the requirements imposed by the rules of discovery or the trial court's March 12, 2009 order and that the defendants had offered no satisfactory explanation for their failure to timely provide this information. Specifically, the trial court concluded that the defendants did not take their obligations seriously and found as a matter of fact that the defendants were "hiding" information otherwise required to be divulged under the rules of discovery.

On August 3, 2009, the trial court signed a judgment finding the defendants in violation of the court's March 12, 2009 order, ordering the defendant to produce certain information, and sanctioning the defendants for failure to comply with its March 12, 2009 order for discovery.[8] The August 3, 2009 judgment of the trial court reads in pertinent part as follows:

> IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion to Compel, for Sanctions, and Contempt is GRANTED;
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant[s] DEERE AND COMPANY and JOHN DEERE LIMITED is [sic] in contempt of this Court's March 12, 2009 Order compelling discovery;
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant[s] DEERE AND COMPANY and JOHN DEERE LIMITED produce, within __10__ days of the execution of this Judgment, all photographs, videos, test reports, a complete accounting of all prior incidents, and all other information that the Deere Defendant has to date omitted from its previous discovery responses, in direct violation of this Court's March 12, 2009 Order compelling the disclosure of information requested by Plaintiff through prior written discovery;
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant[s], DEERE AND COMPANY and JOHN DEERE LIMITED, be and are hereby sanctioned in accordance with LSA-C.C.P. art. 1471 A.(1), and that the following facts are hereby deemed to be established in this case as a matter of law:
>
> (a)    The Deere product that is the subject of this lawsuit, a Deere 400 Series front end loader, was unreasonably dangerous and defective as designed, as indicated by the loader's propensity to spontaneously detach from the tractor;
>
> (b)    Fifteen incidents occurred after Deere's 2000 recall of the loader, indicating that even with Deere's purported corrective measures in place, the 400 series loader was still dangerous and defective as designed, and that the loader in the subject accident suffered from precisely those same dangers and defects;

---

[8]The record contains additional filings between the hearing and the March 12, 2009 judgment relating to discovery issues arising from the trial court's instructions in its reasons for judgment. However, those issues are not before the court in this appeal.

(c)     Deere had knowledge of the dangers in its defectively designed 400 series loader, and knowledge that those dangers were non-obvious, were non-apparent, and/or were hidden; yet Deere failed to warn Plaintiff and/or third parties of these hidden known dangers;

(d)     Deere's failure to warn of the known hidden dangers in its dangerous and defectively designed 400 series loader, as well as the actual manifestation of those dangers in this case, which were inherent in that defective design, were the predominate causes of the injuries sustained by the Plaintiff;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that DEERE AND COMPANY and JOHN DEERE LIMITED, shall be subject to further sanctions under LSA-C.C.P. art. 1471 in the event that DEERE AND COMPANY and JOHN DEERE LIMITED violate this Judgment compelling discovery, and said sanctions may include but shall not be limited to the entry of Judgment by default against DEERE AND COMPANY and JOHN DEERE LIMITED, all as provided by LSA-C.C.P. art. 1471 A. (3);

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that DEERE AND COMPANY and JOHN DEERE LIMITED, in accordance with LSA-C.C.P. art. 1471 C., shall be condemned to pay the reasonable expenses occasioned by Plaintiff in compelling Defendant's disclosure of the information sought in these proceedings in the amount of $ 10,000.00 , as well as reasonable attorney's fees in the amount of $ 15,000.00 , both of said amounts to be paid to Plaintiff within 30 days of the execution of this Judgment;

Deere & Company and John Deere Limited have appealed, asserting the following assignments of error:

1.     The trial court erred in holding Deere in contempt of court.

2.     The trial court erred in holding Deere in contempt of the court's order of March 12, 2009 compelling discovery.

3.     The trial court erred in holding that the design of the Deere loader was defective and that the modifications made in 2000 were not effective.

4.     The trial court erred in holding that Deere failed to warn plaintiff and other users of the dangers of the loader accidently detaching.

5.     The trial court erred in holding that the defective design and failure to warn were the "predominant" causes of plaintiff's injuries.

14

6. The trial court erred in awarding plaintiff $15,000.00 in attorney fees and $10,000.00 in expenses occasioned in compelling Deere's disclosure of information.

7. The plaintiff's answer to appeal is meritless and should be denied.

Ms. Soileau answered the appeal, asserting that:

Given the extent of Deere's discovery misconduct, and the extreme to which Plaintiff has been prejudiced by that misconduct, the article 1471 remedy selected by the trial court was abusively low, inequitable, and beyond the bounds of statutory discretion allowed trial courts.

The court should have granted Plaintiff other 1471 remedies in addition to a mere finding of fact; or in the alternative, the court should have entered a default judgment against Deere for the amount of damages established by the record.

**OPINION**

For purposes of clarity in organization, we will address the defendants' assignments of error out of order.

*Violation of Court-Ordered Discovery*

Deere & Company and John Deere Limited complain in their second assignment of error that the trial court erred in holding them in contempt of the March 12, 2009 order, simply because they did not violate the order. Thus, in this section we first address the essential question of whether the trial court erred in finding that the defendants violated the court's March 12, 2009 order.

It requires no citation that a party propounding discovery is entitled to a timely response. When no response is forthcoming, or if a party is dissatisfied with that response, that party may apply to a court for an order compelling discovery. La.Code Civ.P. art. 1469(2).

With regard to discovery in this case, Ms. Soileau was met with piecemeal and untimely responses to her requests. Given her dissatisfaction with the defendants'

15

responses, she availed herself of the provisions of La.Code Civ.P. art. 1469(2). Recognizing the deficiencies in the defendants' efforts at responding to discovery, the trial court rendered its March 12, 2009 order and, as a part of that order, instructed Deere & Company and John Deere Limited to "answer all of the Interrogatories and Request for Production of Documents previously sent to the defendants in compliance with Article 1458 of the Louisiana Code of Civil Procedure," within fifteen days. The record reflects that the defendants clearly did not comply within the fifteen days, did not seek an extension of that time, and continued to provide information piecemeal until two days before the discovery deadline.

Nonetheless, the defendants assert on appeal, as they did at the July 1, 2009 hearing, that they should not be found in violation of the March 12, 2009 order because they had not discovered the thirty-one warranty claims previously and they forwarded them to Ms. Soileau promptly upon their discovery. However, the trial court noted that in documents provided to the Consumer Product Safety Commission in 2000, Ms. Morrison had mentioned searching the warranty database, and that the database was at all times in the defendants' control. We also note that at the July 1, 2009 hearing, the defendants' counsel was unable to explain how his clients were able to provide the customers' names, addresses, and phone numbers and the dealers' names and locations in its June 1, 2009 response, when less than a month before they had certified that they had no information other than what was on the face of the documents that they attached to their answer. The defendants' counsel made general allegations concerning the problems associated with different reporting databases, the large size of the companies, and their many franchises and dealers throughout the country.

16

The defendants also point to the trial court's oral reasons for judgment, in which the trial court stated that they failed to make a "reasonable" search of the warranty records. Using this language, the defendants argue that because the trial court did not find that the defendants *intentionally* violated the court's discovery order, it was error to find that they had violated the March 12, 2009 discovery order. This argument ignores the language in the oral reasons for judgment, wherein the trial court made the specific finding that the defendants had deliberately violated the discovery order, saying "I think John Deere has tried to put an obstacle at every turn of the discovery of previous incidents."

Finally, the defendants argue that because Ms. Soileau did not suffer any unfair prejudice, "any deficiencies in Deere's discovery responses do not warrant the imposition of any sanctions for failure to respond to discovery." The general rule is that "[t]he decision whether to grant relief against a recalcitrant party rests within the discretion of the trial court and will not be disturbed absent an abuse of that discretion." *LeJeune v. Lafayette Tower Service*, 94-1240, p. 4, (La.App. 3 Cir. 4/5/95), 653 So.2d 112, 114. The trial court's oral reasons for judgment, given at the close of the hearing, indicate that it found that Deere's violations of the March 12, 2009 court order were willful. At the close of the hearing on July 1, 2009, the trial court stated that "I do not feel that John Deere has made a reasonable effort" in providing information on prior claims." When considering the prejudice to Ms. Soileau, it is notable that the second supplemental answers to Ms. Soileau's second set of interrogatories were sent on May 5, 2009, and the responses providing the additional information not on the forms sent with the second supplemental answers were sent on June 1, 2009, all at a time when a March 12, 2009 court order provided

17

that the deadline for all fact discovery was May 8, 2009, and the jury trial was set for July 20, 2009.[9] As the trial court noted, it would require extraordinary effort for Ms. Soileau's counsel to find and depose more than thirty-one people in that time frame.

We find no abuse of the trial court's discretion in its finding that Deere & Company and John Deere Limited violated the court's March 12, 2009 order compelling discovery and, therefore. no merit in this assignment of error.

*Sanctions*

In their second assignment of error, Deere & Company and John Deere Limited argue that they should not be sanctioned under La.Code Civ.P. art. 1471. The supreme court has explained that "[t]here is a distinction between the sanctions available for failure to comply with discovery and the sanctions available for disobedience of court ordered discovery." *Horton v. McCary*, 93-2315, p. 9 (La. 4/11/94), 635 So.2d 199, 203. Because refusal to comply with a court order addressing discovery is such "a serious matter . . . [t]rial judges must have severe sanctions available to deter litigants from flouting discovery orders." *Id*. at 203. These "severe sanctions" are made available to the trial court through La.Code Civ.P. art. 1471(A), which provides generally that the court may "make such orders in regard to the failure as are just" including the following specific sanctions:

> (1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

> (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

---

[9]The trial court's August 3, 2009 judgment moved the date of trial to March 15, 2010.

18

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Subparagraphs (1), (2), and (3) of this Paragraph, unless the party failing to comply shows that he is unable to produce such person for examination.

We further note that the scope of review has been set by the supreme court. "The trial court has much discretion in imposing sanctions for failure to comply with discovery orders, and its ruling should not be reversed absent an abuse of discretion." *Hutchinson v. Westport Ins. Co.*, 04-1592, p. 2 (La.11/08/04), 886 So.2d 438, 440. We find no abuse of discretion in the trial court's judgment in imposing sanctions under La.Code Civ.P. art. 1471.

***Contempt of Court Sanction***

The defendants argue that their actions did not constitute contempt within the meaning of La.Code Civ.P. art. 221.[10] This argument falls because Ms. Soileau opted to file a motion for discovery sanctions under La.Code Civ.P. art. 1471, rather than a motion for contempt under La.Code Civ.P. art. 221. Still, the trial court may find a defendant in contempt of court for failure to obey a discovery order. La.Code Civ.P. art. 1471(A)(4). Thus, we treat the defendants' first assignment of error as an

---

[10]Louisiana Code of Civil Procedure Article 221 provides:

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.

Contempts of court are of two kinds, direct and constructive.

assertion that the trial court erred in finding them in contempt of court as a sanction. While noting that the trial court did not punish defendants with a fine or imprisonment under La.R.S. 13:4611(d), for the reasons previously stated, we find no error in the trial court's imposition of a finding of contempt of court.

***Factual Findings Sanctions***

In their third, fourth, and fifth assignments of error, the defendants argue that the trial court erred in sanctioning them under La.Code Civ.P. art. 1471 by imposing the following factual findings: that the design of the Deere loader was defective and that the modifications made in 2000 were not effective; that the defendants failed to warn Ms. Soileau and other users of the dangers of the loader accidently detaching; and that the defective design and failure to warn were the "predominant" causes of Ms. Soileau's injuries.

Specifically, the defendants argue that these factual findings are contrary to the evidence that had so far been presented in the case and that they bypass the requirements of the Louisiana Products Liability Act (LPLA), La.R.S. 9:2800.51 *et. seq.*[11]  Louisiana Code of Civil Procedure Article 1471 gives the trial court broad authority and discretion to impose any sanctions that are just, including an order that designated facts shall be taken as established for the purposes of the lawsuit. La.Code Civ.P. art. 1471(A)(1).  Contrary to Deere's argument, that article does not require that the designated facts be supported by the weight of evidence.  Nor does the LPLA prohibit a trial court from ordering that designated facts shall be taken as established for the purposes of a suit brought under that act.  Although the LPLA

_____

[11]Deere also argues that the question of whether the design was still defective after the recall was related to a writ application pending before the Louisiana Supreme Court, in which Deere sought to preclude evidence of other incidents that were not factually similar.  However, since the supreme court has now entered an order denying that writ application, *Soileau v. Smith's True Value and Rental*, 09-2113 (La 12/11/09), this argument is now moot.

"establishes the exclusive theories of liability for manufacturers for damage caused by their products," La.R.S. 9:2800.52, this does not limit the trial court's power to impose sanctions when a party disobeys the court's order concerning discovery. Thus, we find no merit in these arguments.

The defendants also argue that the sanctions imposed are "the functional equivalent of dismissing a plaintiff's claims for failure to respond to discovery." The defendants correctly state that the ultimate sanction for failure to comply with discovery orders is dismissal with prejudice or entry of a default judgment, and that "[b]oth dismissal and default are draconian penalties which should be applied only in extreme circumstances." *Horton*, 635 So.2d at 203. However, we do not find that the sanctions imposed have the effect of a default judgment.

To determine whether the trial court's sanctions have the functional effect of entering a default judgment against Deere & Company and John Deere Limited, we must look at the substantive law at issue in this case, the LPLA.

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. La. R.S. 9:2800.54(A). A product is "unreasonably dangerous" under the LPLA if and only if the product meets at least one of the following criteria: (1) the product is unreasonably dangerous in construction or composition as provided in La. R.S. 9:2800.55; (2) the product is unreasonably dangerous in design as provided in La. R.S. 9:2800.56; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in La. R.S. 9:2800.57; or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in La. R.S. 9:2800.58. La. R.S. 9:2800.54(B).

*Jack v. Alberto-Culver USA, Inc.*, 06-1883, p. 4 (La. 2/22/07), 949 So.2d 1256, 1258 (footnote omitted).

Further, the plaintiff must prove that the characteristic which renders the product unreasonably dangerous existed at the time that the product left the manufacturer's control or resulted from a reasonably anticipated alteration or modification of the product. La.R.S. 9:2800.54(C).

The facts that the trial court deemed to be established satisfy two of the four elements that Ms. Soileau is required to prove: that her damage was proximately caused by a characteristic of the product and that this characteristic made the product "unreasonably dangerous." Ms. Soileau still has the burden of proving that the defendants are the manufacturers of the product; that her damage arose from a reasonably anticipated use of the product, and that the characteristic that rendered the product unreasonably dangerous either existed at the time that the product left the manufacturer's control or resulted from a reasonably anticipated alteration or modification of the product. Because the trial court's designation of certain facts as established does not resolve all, or even most, of the elements that the plaintiff must prove, we hold that the trial court's August 3, 2009 order is not the functional equivalent of a default judgment. *Contrast with Columbia Homestead Ass'n v. Arnoult*, 615 So.2d 1 (La.App. 4 Cir. 1992), where the court of appeal held that the trial court's ruling prohibiting the defendants from presenting any affirmative defenses or a reconventional demand at the trial of the matter had the "equivalent effect" of entering a default judgment against them on the principal demand and dismissing their reconventional demand; and *Skidmore v. Salvadras*, 496 So.2d 435, 438 (La.App. 1 Cir. 1986), where the court of appeal held that the effect of the trial court's ruling that the plaintiff would not be allowed to testify was "equivalent to a dismissal of his cause of action altogether."

22

Finally, the defendants assert that the trial court's sanction to the effect that "Deere's failure to warn of the known hidden dangers in its dangerous and defectively designed 400 series loader, as well as the actual manifestation of those dangers in this case, which were inherent in that defective design, were the predominate causes of the injuries sustained by the Plaintiff" lacks clarity by the use of "predominate." It seems most likely that the trial court intended to state that the failure to warn and the defective design were the *proximate* cause or causes of Ms. Soileau's injuries. *See* La.R.S. 9:2800.54(A). However, rather than change the verbiage, we remand this matter to the trial court to consider whether the sanction requires amendment to reflect the legal term as opposed to the term used.

### *Attorney Fees and Expenses*

The defendants argue in assignment of error number six that the trial court erred in awarding Ms. Soileau $15,000.00 in attorney fees and $10,000.00 in expenses incurred in compelling their disclosure of information through the discovery process. In considering this argument, we first note that La.Code Civ.P. art. Article 1471(C) provides in pertinent part that in addition to the sanctions that may be imposed, "the court *shall* require the party failing to obey the order . . . to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.)

The defendants had the burden of proof to establish substantial justification or circumstances that would make the otherwise mandatory award unjust. *Corumia v. Broadhurst*, 584 So.2d 377 (La.App. 3 Cir. 1991). In this matter, the trial court determined that the defendants' failure to comply with the court's order was not

substantially justified, and the defendants made no showing to establish other circumstances that would cause the award to be unjust. Therefore, we find no error in the trial court's award of attorney fees and expenses.

We find no error in the amount of the attorney fees awarded as well, as it is apparent from the record before us that Deere's failure to comply with the trial court's orders concerning discovery caused Ms. Solieau's counsel to put forth a substantial amount of time and effort. We conclude that the trial court's $15,000.00 award is supported by the record before us and should not be altered. However, as to the actual expenses associated with discovery, Ms. Soileau introduced no evidence separate from the record. It was Ms. Soileau's obligation to establish the amount of these reasonable expenses. *See Corumia*, 584 So.2d 377. We reduce the expenses award to the lowest reasonable amount considering the expenses that are apparent on the face of the record before us: $2,000.00.

### *Answer to the Appeal*

In her answer to the appeal, Ms. Soileau seeks an increase in the sanctions imposed. Based on our review of the issues above, we find that the trial court did not abuse its discretion in selecting the appropriate sanctions for Deere's violations of the court's discovery orders. *Prewitt v. Rodrigues*, 04-1195 (La.App. 3 Cir. 2/2/05), 893 So.2d 927.

### DISPOSITION

For the foregoing reasons, we reduce the expenses awarded to Ms. Soileau to $2,000.00; remand to the trial court for it to consider whether to amend the verbiage of the sanction; and affirm the trial court order as amended in all other respects. We remand for further proceedings consistent with this opinion. We assess all costs of

24

this appeal fifty percent to the plaintiff, Mary Phyllis Soileau, and fifty percent to the defendants, Deere & Company and John Deere Limited.

**AFFIRMED AS AMENDED AND REMANDED WITH INSTRUCTIONS.**